UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESIGNATURE SOFTWARE, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ADOBE INC.,<br><br>　　　　　Defendant. | Case No. 22-cv-05962-JSC<br><br>**ORDER REGARDING MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 40 |

Plaintiff Esignature Software filed a patent infringement suit against Defendant Adobe alleging Defendant infringed the claims of U.S. Patent No. 8,065,527. Before the Court is Defendant's Motion for Judgment on the Pleadings. After carefully considering the submissions of the parties, the relevant law, and the record in this case, and having had the benefit of oral argument on January 19, 2023, the Court GRANTS Defendant's motion.

**BACKGROUND**

Plaintiff owns U.S. Patent No. 8,065,527 (the "'527 patent"), titled "SYSTEM AND METHOD FOR EMBEDDING A WRITTEN SIGNATURE INTO A SECURE ELECTRONIC DOCUMENT." (Dkt. No. 1 ¶ 6; Dkt. No. 1-1 at 1.)[1] The '527 patent's abstract states:

> A system and method for embedding a written signature into a secure electronic document is disclosed. The method includes forming a placeholder electronic document containing content to be attested to by a signature. A signing individual can be selected from a signer list. A signature tag can be placed into the placeholder electronic document at a selected signature location. The signature tag is associated with the signing individual and defines the signature location for the signing individual to sign. The placeholder electronic document can be secured to form a secure electronic document having content configured to be uneditable. A signature can be captured with a signature capture device configured to be embedded into the secure electronic document at the location indicated by the signature tag to mimic the real world experience of signing paper documents.

(Dkt. No. 1-1 at 1.) The '527 patent was issued in 2011. (*Id.*) It comprises 26 claims. (*Id.*) The

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

parties agree Claims 1 and 12 are representative of the '527 patent. (Dkt. No. 40 at 15; Dkt. No. 45 at 7.) Claim 1 describes:

> 1. A method for embedding a written signature into a secure electronic document, comprising:
>
> forming a placeholder electronic document containing content to be attested to by a signature;
>
> selecting a signing individual from a signer list; placing a signature tag into the placeholder electronic document at a selected signature location, wherein the signature tag is associated with the signing individual and defines the signature location within the placeholder electronic document for the signing individual to sign;
>
> securing the placeholder electronic document to form the secure electronic document having content configured to be uneditable;
>
> sizing an unsigned signature bounding box on a signature capture device based on a type of the signature tag at the signature location, wherein the signature bounding box is displayed independently of a display of the secure electronic document;
>
> and capturing a signature with the signature capture device within the signature bounding box as the signature is written by the signing individual, the signature capture device being configured to enable the signing individual to write the signature to be embedded into the secure electronic document at the signature location indicated by the signature tag to mimic a real world experience of signing paper documents.

('527 patent, col. 10:45–11:3.)  While Claim 1 describes a "method" claim, Claim 12 describes a "system" claim.  It specifies:

> A system for embedding a written signature into a secure electronic document, comprising:
>
> an editing module configured to edit content in a place holder electronic document, wherein the content is to be attested to by a signature;
>
> a signer list module comprising a list of selectable signing individuals; a tagging module for adding at least one signature tag associated with the selected signing individual to the placeholder electronic document, wherein each of the at least one signature tag defines a location for a signature within the electronic document and indicates the signing individual associated with the signature tag to sign at the location;
>
> a secure document creation module for securing the content in the placeholder electronic document to form a secure electronic document containing content configured to be uneditable;

        a secure document signer module to enable the secure electronic document to be viewed and to accept written signatures from the signing individuals at the signature tag location;

        a signature capture device configured to enable the signing individual to write a signature at a transaction time for each of the at least one signature tag associated with the signing individual and further configured to size an unsigned signature bounding box based on a type of the signature tag at the location, wherein the signature bounding box is displayed independently of a display of the secure electronic document;

        and a signature capture module configured to electronically embed the signature of the signing individual from bounds of the signature bounding box on the signature capture device into the secure electronic document at a location of each of the at least one signature tag associated with the signing individual.

('527 patent, col. 11:46–12:14.)

## DISCUSSION

Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings may be granted when, accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party is entitled to judgment as a matter of law. *Chavez v. United States,* 683 F.3d 1102, 1108 (9th Cir. 2012). Defendant argues the '527 patent is ineligible for patent protection under 35 U.S.C. § 101 as a matter of law. *See In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir. 2014) ("Section 101 patent eligibility is a question of law"). The Court agrees.

**I.     35 U.S.C. § 101**

35 U.S.C. § 101 "defines the subject matter that may be patented under the Patent Act." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). Under § 101, patentable subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. "These categories are broad, but they are not limitless." *Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1136 (N.D. Cal. 2017).

"Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). These exceptions are not patent-eligible because "they are the basic tools of scientific and technological work," which are "free to all . . . and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S.

3

66, 70 (2012) (cleaned up). Allowing patent claims for such purported inventions "would tend to impede innovation more than it would promote it." *Id.* But Courts must "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice Corp.*, 573 U.S. at 217. "At some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id*. So, "applications of such concepts to a new and useful end . . . remain eligible for patent protection." *Id.* (cleaned up).

The two-step "*Alice*" framework distinguishes "patents that claim laws of nature, natural phenomena and abstract ideas from those that claim patent eligible applications of those concepts." *Id.* First, the Court must "determine whether the claims at issue are directed to a patent-ineligible concept." *Id.* If so, the Court then assesses "whether the elements of the claim, both individually and as an ordered combination . . . transform the nature of the claim into a patent eligible application." *Id.* (cleaned up).

### A. Step One: The claims are directed to an abstract idea

At *Alice* Step One, the Court decides whether the '527 patent's claims are directed to an "abstract idea." (Dkt. No. 40 at 7; Dkt. No. 45 at 11.) This inquiry has two parts. First, the Court identifies precisely what the claims are directed to accomplish. Second, the Court determines whether that "focus" is an abstract idea.

#### 1. The "directed to" inquiry

As a threshold matter, the Court need not individually analyze every claim under the *Alice* rubric if certain claims are "representative." *Twilio*, 249 F. Supp. 3d at 1141 (citing *Alice*, 573 U.S. at 224). Here, the parties identify Claims 1 and 12 as representative. (Dkt. No. 40 at 15; Dkt. No. 45 at 7.) In evaluating these claims, the Court examines "'the focus of the claimed advance over the prior art' to determine if the character of the claim as a whole, considered in light of the specification, is directed to [an abstract idea]." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019) (quoting *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017)). Put differently, the Court must first identify "what the claimed invention is trying to achieve" and then ask, "whether that purpose is abstract." *California Inst. of Tech. v. Hughes Commc'ns Inc.*, 59 F. Supp. 3d 974, 991 (C.D. Cal. 2014).

Finding a claim's "focus" requires a delicate balancing act. While the process necessarily requires some high-level description, the Court must articulate "what the claims are directed to" with "enough specificity to ensure the step one inquiry is meaningful." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.") According to Plaintiff, the Claims focus on "a system and method for embedding the electronic equivalent of a handwritten signature into a secure electronic document." (Dkt. No. 45 at 12.) Defendant describes the focus as "the idea of applying a person's signature in the designated place within a document." (Dkt. No. 40 at 15.)

The truth is some combination of these two descriptions. Claims 1 and 12 describe a system and method to (1) create a secure and un-editable electronic document, (2) decide who will sign that document, (3) determine where in the document each signer should sign, and (4) enable the signer to "mimic the real world experience of signing paper documents." (Dkt. No. 1-1 at 16–17.) In other words, the invention's general focus is a system or method to apply a signature digitally, in a designated place, within a secure electronic document.

### 2. The "abstract idea" inquiry

Next, the Court must determine whether that focus is an abstract idea. "Neither the U.S. Supreme Court nor the Federal Circuit has set forth a bright line test separating abstract ideas from concepts that are sufficiently concrete so as to require no further inquiry under the first step of the *Alice* framework." *Twilio*, 249 F. Supp. 3d at 1138 (citing *Alice*, 573 U.S. at 221). Rather, courts "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

The term "abstract idea" has a particular meaning in the § 101 context. For example, the Federal Circuit has said a longstanding commercial practice that "can be and has been performed by humans without the use of a computer . . . is an abstract idea." *Mortg. Application Techs., LLC v. MeridianLink, Inc.*, 839 F. App'x 520, 526 (Fed. Cir. 2021) (finding abstract the idea of "information exchange in an online loan application process which can easily be performed by a

human"); *see also Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1182 (Fed. Cir. 2020) ("Claims … directed to longstanding commercial practices do not pass step one of the two-part § 101 test.")  Where a practice has a brick-and-mortar analog or can be performed by humans with a pen and paper, the idea also may be abstract under § 101.  *See Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016) (analogizing an email processing software program to a "brick and mortar" post office or corporate mailroom.);  *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1147 (Fed. Cir. 2016) (claims for translating a functional description of a logic circuit into a hardware component description of the logic circuit were invalid because they "can be performed mentally or with pencil and paper"); *see also California Inst. of Tech. v. Hughes Commc'ns Inc.*, 59 F.Supp.3d 974, 995 (C.D. Cal. 2014) (viewing pencil-and-paper test as a "stand-in for another concern: that humans engaged in the same activity long before the invention of computers.")  But a software innovation can be eligible where the claims purport "to improve the functioning of the computer itself."  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016).

The '527 patent is directed to an abstract idea. Claims focusing on the application of signatures to specific points in a secure electronic document "simply recite that existing business practice with the benefit of generic computing technology." *Return Mail, Inc. v. United States Postal Serv.*, 868 F.3d 1350, 1368 (Fed. Cir. 2017), *rev'd and remanded on other grounds*,139 S. Ct. 1853 (2019). Indeed, the patent itself recognizes that "signatures have been used for centuries to notarize and authenticate documents" and the invention aims to "mimic a real world experience of signing paper documents."  (Dkt. No. 1-1 at 1, 12.)  Generic computer implementation of an abstract idea does not make an abstract idea any less abstract.   *Return Mail*, 868 F.3d at 1368.  Both the brick-and-mortar test and the "pen and paper" test direct the same result.  Just as an individual in the brick-and-mortar world might place "sign here" tabs on a typed contract, the '527 patent describes the same process on a computer.  *See Symantec Corp.*, 838 F.3d at 1317.  And if the pen-and-paper test is a "stand-in" for the "concern[] that humans engaged in the same activity long before computers," that concern is certainly triggered here.  *California Inst. of Tech.*, 59 F. Supp. 3d at 995.  So, because this patent takes an age-old commercial practice—allowing persons

6

to sign documents in specific places—and applies it to the electronic context, the patent is directed to an abstract idea as that term is used in the section 101 context.

Plaintiff's contrary arguments are unpersuasive.[2] Plaintiff asserts the '527 patent addresses a non-abstract idea because it solves a business challenge rooted in computer technology and particular to the internet. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). The Court disagrees. "In cases involving software innovations," the abstract idea inquiry often turns on "whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies an abstract idea for which computers are invoked merely as a tool." *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020). This inquiry—to an extent—blends the "abstractness" analysis with the second step in *Alice*—the search for an inventive concept. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016) (explaining that the Step One and Step Two inquiries can blend together when software patents are at issue). At oral argument, Defendant provided a useful example to distinguish between Plaintiff's asserted patent from an invention that improves computer capabilities. An invention that encodes signatures in a unique way to save computing power or memory storage might be non-abstract because the invention focuses on an improvement to the computer's capabilities. But mere instructions to sign a document *on a computer* are insufficient. Put differently, claims that do something *to* a computer may be concrete, but claims that do something abstract *on* a computer are not. *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016). The Court agrees the latter describes the claims here.

The '527 patent's claims focus on an abstract idea for which computers are invoked merely as a tool. For example, if one deletes the word "electronic" from Claim 1 in the '527 patent, the method description would be indistinguishable from the process of signing a paper document.

---

[2] Plaintiff notes "there is no record evidence of the claimed solution existing prior to the invention of the claims of the '527 patent and thus there is no record evidence that the claimed novel and improved system and method are conventional." (Dkt. No. 45 at 11.) But novelty makes no difference under the first step of the *Alice* test. "We may assume that the techniques claimed are '[g]roundbreaking, innovative, or even brilliant,' but that is not enough for eligibility." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 591 (2013)).

1    This is the "do it on a computer flaw." *See Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916
2    F.3d 1363, 1367 (Fed. Cir. 2019) ("This is a quintessential "do it on a computer" patent: it
3    acknowledges that data from bedside machines was previously collected, analyzed, manipulated,
4    and displayed manually, and it simply proposes doing so with a computer. We have held such
5    claims are directed to abstract ideas.") While Claim 12 includes terms such as a "signer list
6    module," a "tagging module" and a "secure document creation module," these generic terms are
7    insufficient "to remove the asserted claims outside the realm of abstraction." *Aftechmobile Inc. v.
8    Salesforce.com, Inc.*, No. 19-CV-05903-JST, 2020 WL 6129139, at *7 (N.D. Cal. Sept. 2,
9    2020), *aff'd*, 853 F. App'x 669 (Fed. Cir. 2021). Such terms are "purely functional and generic,"
10   *Alice*, 573 U.S. at 226, without any meaning or technical elaboration beyond the function
11   described. *Cf. Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 21-CV-08294-
12   VC, 2022 WL 4093168, at *1 (N.D. Cal. Sept. 7, 2022) ("The term 'playlist generator,' for
13   example, is just a placeholder for whatever computer software or hardware performs that step.")
14   "For the role of a computer in a computer-implemented invention to be deemed meaningful in the
15   context of this analysis, it must involve more than performance of 'well-understood, routine, [and]
16   conventional activities previously known to the industry.'" *Content Extraction & Transmission
17   LLC v. Wells Fargo Bank, Nat. Ass'n,* 776 F.3d 1343, 1347–48 (Fed. Cir. 2014). The claims here
18   fail to do so.
19   In sum, because the patent proposes accomplishing an age-old process in a generic
20   electronic format, the patent's focus fails to transcend the abstract idea category as a matter of law.
21       **B.**    **Step Two: The claims lack an inventive concept.**
22   Patent claims directed to an abstract idea may be patentable if the claims contain an
23   "inventive concept," either individually or taken together. *Alice*, 573 U.S. at 225. The inventive
24   concept must add "significantly more" to the abstract idea, *Mayo.*, 566 U.S. at 72-73, enough to
25   "transform" it into a "patent-eligible application" of the abstract idea, *Alice*, 573 U.S. at 221.
26   No inventive concept exists here. The claims "simply recite[] the use of generic features . .
27   . to implement the underlying idea." *DIRECTV,* 838 F.3d at 1262. But "simply appending
28   conventional steps specified at a high level of generality" to an abstract idea does not make that

8

idea patentable, *id.* at 1263, as "[g]eneric computer implementation" is insufficient to transform a patent-ineligible abstract idea into a patent-eligible invention. *Alice*, 573 U.S. at 223–224. Thus, just as the Court determined the claims fail to elaborate on specific improvements to computer capabilities at *Alice* Step One, the claims fail at *Alice* Step Two for the same reason. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016) (explaining that the Step One and Step Two inquiries can blend together when software patents are at issue).

Plaintiff's contrary arguments are again unpersuasive. First, Plaintiff argues factual disputes preclude judgment on the pleadings. (Dkt. No. 45 at 17–18.) The fact Plaintiff highlights is an assertion that prior to the claimed invention, it was difficult to replace a written signature in digital form. (*Id.* at 18.) But even if the Court assumes, as a factual matter, Plaintiff's solution addressed a difficult and unsolved problem, it does not follow that the claimed invention added "significantly more" to an abstract idea. *Cf. Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 904 (Fed. Cir. 2020) ("[S]atisfying the requirements of novelty and non-obviousness does not imply eligibility under § 101, including under the second step of the *Alice* inquiry, because what may be novel and non-obvious may still be abstract.") In other words, if a claim says, "apply an abstract concept on a computer to solve a difficult problem that has never before been solved," that patent *still* fails the *Alice* inquiry at step two. As the discussion above illustrates, the claims here provide little more to an age-old practice.

Plaintiff's reliance on *Messaging Gateway Solutions, LLC v. Amdocs, Inc.* is inapposite. *See* No. CV 14-732-RGA, 2015 WL 1744343 (D. Del. Apr. 15, 2015). In that case, the court differentiated between claims that "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet" and claims that "solved a problem specific to the realm of computer networks in a way that was rooted in computer technology." *Id.* at *5 (citing *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014)). The patent-eligible invention in *Messaging Gateway Solutions* belonged in the second category because the invention was "directed to a problem unique to text-message telecommunication between a mobile device and a computer." *Id.* The invention moved beyond abstraction because it enabled something previously impossible and provided "meaningful

9

limitations that prevent the invention from preempting the abstract idea of receiving, translating, and delivering a message." *Id.*

The claims here fail to provide a similar inventive concept. While Plaintiff contends this invention allows a person to handwrite signatures electronically in a manner previously impossible on computers, the claims lack any description as to *how* the purported invention solves that problem. And, unlike the claims in *Messaging Gateway Solutions*, the claims here lack any meaningful limitation on the invention's preemptive scope. For example, Claim 12 references a "signature capture device" to capture signatures. At the hearing, Plaintiff's counsel argued the patent does not limit itself to a specific type of device because "technology changes over time." (Liberty Recording at 7:00.) That is exactly the type of abstract idea preemption the Supreme Court warned about in *Alice*. 573 U.S. at 223–224. In short, this patent does not invent much of anything, but purports to preempt all forms of digital signature capture. That is insufficient to constitute an inventive concept. Thus, because the claims "recite the performance of some business practice known from the pre-[computer] world along with the requirement to perform it on the [computer]," *DDR Holdings, L.P.*, 773 F.3d at 1259, the claims fail under *Alice* step two.

## CONCLUSION

In sum, because the claims are directed to an abstract idea and lack a sufficient inventive concept the '527 patent is ineligible under 35 U.S.C. § 101. Defendant's motion for judgment on the pleadings is GRANTED.

**IT IS SO ORDERED.**

Dated: February 21, 2023

JACQUELINE SCOTT CORLEY
United States District Judge